**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**ANGELA NICOLE RANSON** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 4:21-cv-157-JMV**

**COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

**ORDER**

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for disability insurance benefits, a period of disability, and supplemental security income. The undersigned held a hearing on June 29, 2022 [16]. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

**Standard of Review**

The Court's review of the Commissioner's final decision that Plaintiff was not disabled

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Statement of the Case**

Plaintiff protectively filed an application in the present matter on March 27, 2017, alleging his disability commenced on March 1, 2017. The application was denied initially and upon

reconsideration. Plaintiff filed a timely request for a hearing. The Administrative Law Judge (hereinafter "ALJ") issued an Unfavorable Decision in this cause on January 11, 2019. The Appeals Council issued an Order dated November 18, 2019, which remanded the case back to the ALJ. The ALJ then issued another Unfavorable Decision on May 20, 2020. Likewise, this decision was remanded back to the ALJ on October 16, 2020, with instructions to the ALJ to give consideration to the medical source opinions, including those at Exhibits 4E and 11E, and prior administrative medication findings.

ALJ Michael DePrimo subsequently held another hearing on March 10, 2021, where Plaintiff was represented by her attorney. Debra G. Civils, an impartial vocational expert, also appeared at the hearing. At the hearing, ALJ Primo specifically noted the reason for the prior remands and stated that he had seen the opinions of Plaintiff's therapist, Mrs. Jacqueline Jones. The ALJ rendered a third Unfavorable decision on April 14, 2021. This decision was appealed, and the Appeals Council issued a Notice of Appeals Council Action on September 30, 2021, thereby making it the decision of the Commissioner and the Social Security Administration for purposes of judicial review under the Social Security Act.

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of March 1, 2017. At step two, the ALJ found that the Plaintiff had the following "severe" impairments: inflammatory polyarthritis, fibromyalgia, obesity, depressive disorder, anxiety disorder, personality disorder, and obsessive-compulsive disorder (20 CFR 404.1520(c) and 416.920(c)). At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings).

The ALJ then assessed Plaintiff's RFC and found that she retained the ability to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently reach, handle, finger, and feel. The claimant can occasionally reach overhead on the right. The claimant must avoid concentrated exposure to unprotected heights and moving machinery. The claimant can perform routine and repetitive tasks. She can understand, remember, and carry out short, simple instructions. She can sustain concentration, persistence, and pace for two-hour blocks of time. She can occasionally interact with coworkers and supervisors but never interact with the general public. She can adapt to occasional changes in the workplace. She cannot work at a production rate pace. She may be off-task up to ten percent of the workday.

At step four, the ALJ found that the Plaintiff could not perform her past relevant work. She had past relevant work as a fast-food cashier and a short order cook. She was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability date. She has at least a high school education. The ALJ found that transferability of job skills is not material to the determination of disability.

At step five, the ALJ considered the vocational expert's testimony and found that given all of the factors present, the Plaintiff would be able to perform the requirements of representative occupations such as a marker, a router, and a garment sorter, which are unskilled jobs performed at the light exertional level. Accordingly, the ALJ found Plaintiff not disabled and denied her applications for period of disability, DIB, and SSI.

**Discussion**

The issue raised by the Plaintiff on appeal is whether the ALJ erred in his analysis of the

Plaintiff's mental health impairments. For the reasons explained in detail below, the Court finds that the ALJ's decision was supported by substantial evidence and should be affirmed.

The primary issue raised by the Plaintiff is that the ALJ clearly erred in his analysis of the mental health assessments of Jacqueline Jones, Plaintiff's therapist. With regard to Mrs. Jones, the ALJ stated as follows:

> Jacqueline Jones, the claimant's therapist, submitted a statement dated April 10, 2017 (Exhibits 4E). She indicated that the claimant has diagnoses of major depressive disorder, unspecified personality disorder, and unspecified anxiety disorder. She reported that the claimant has good compliance with treatment of medication management and individual therapy and has been prescribed Abilify and Effexor. Mrs. Jones assessed the claimant with poor ability to relate to coworkers, deal with the public, use judgment, interact with supervisors, and deal with work stressors. However, she indicated that the claimant has fair ability to follow work rules, function independently, and maintain attention and concentration. She noted that the claimant's symptoms cause significant distress in social, occupational, and academic settings, and affects cognitive thinking, interpersonal functioning, and impulse control. Mrs. Jones indicated that the claimant has poor ability to understand, remember, and carry out complex job instructions and detailed, but not complex job instructions and fair ability to understand, remember, and carry out simple job instructions. She again indicated that the claimant's symptoms affect cognitive thinking. Mrs. Jones assessed that the claimant has poor ability to behave in an emotionally stable manner and relate predictable in social situations, fair ability to demonstrate reliability, and good ability to maintain personal appearance. She noted that the claimant's mood changes affect her ability to function clearly. She indicated that the claimant does not have problems maintaining attention or concentration in completing various tasks, chores, or leisure activities. She reported that the claimant has problems relating with others. She has an inability to get along with others, which interferes with performance at several job sites assigned, thought the TANF program. She reported that the claimant worked with the TANF program at several sites including daycare, apartment complexes, and recreational centers.
>
> Mrs. Jones submitted another statement in August 2017 (Exhibit 11E). She assessed that the claimant had poor ability to follow work rules. Mrs. Jones noted that poor cognitive behavior, negative perception of others, and inability to accept changes and criticism supports her findings. She assessed that the claimant has problems maintaining attention or concentration in completing various tasks, chores, or leisure activities. She noted that the claimant is easily distracted and does not complete tasks. She further reported that the claimant exhibits problems relating to others noting very argumentative, negative perception of others, and poor social interaction skills. She reported that the claimant has been terminated from multiple

> job sites due to inability to follow rules and behavior towards others. She reported that the symptoms caused by the claimant's mental illness affects full performance in work activity. The undersigned finds that Mrs. Jones's opinions are not persuasive. Her opinions are only four months apart, and Mrs. Jones's own treatment records demonstrate significant improvement with medication changes on and after October 2017. Given the claimant's alleged onset date is March 2017 and improvement was shown after October 2017, Mrs. Jones's opinion does not cover a full 12-month period.

(TR. 22-23).

At the outset, the Court notes that the RFC assessment is based on "all of the relevant medical and other evidence" (20 C.F.R. § 416.945(a)(3)), including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 SSR LEXIS 5, at *13-14. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007), citing *Holman v. Massanari,* 275 F.3d 43 (5th Cir. 2001). To carry weight, subjective statements must be corroborated by objective findings. *Harrell v. Bowen*, 862 F.2d471, 481 (5th Cir. 1988); SSR 96-8p, 1996 WL 374181, at *5.

Furthermore, following the 2017 revisions to the Rules, "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021). Instead, the ALJ considers the persuasiveness of medical opinion evidence. 20 C.F.R. § 416.920c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 416.920c(c). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). In considering these factors, the ALJ is required to "explain how [h]e considered the supportability

and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* (emphasis added). With respect to supportability, other Courts have reasoned that "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)). Regarding consistency, this factor is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. § 416.920c(c)(2)); see also Revision to Rules, 82 Fed. Reg. at 5853.

While the Appeals Council remanded this case twice before, after reviewing the record before it, it appears to this Court that the ALJ thoroughly analyzed each of Plaintiff's conditions, and in doing so, considered Plaintiff's subjective reports of her medical and psychological conditions, the objective evidence of Plaintiff's treatment for each alleged impairment, and the opinions from the State agency psychological consultants. (TR. 18-24). The ALJ's analysis includes consideration of the opinion of Mrs. Jones, as detailed above. (TR. 22-23).

The Fifth Circuit has held that "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Rather, "[r]emand is only appropriate 'where there is no indication the ALJ applied the correct standard." *Id.* (citation omitted). The burden is on the party claiming error to demonstrate not only that an error is present, but also that it affected her "substantial rights." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

The records contained in the transcript reveal that Plaintiff was hospitalized from March 21, 2017, to March 24, 2017, at Merit Health Batesville due to suicidal and homicidal ideation. (TR. 704). Records from that hospitalization state that her "condition improved" and at the time

of discharge, she was not suicidal or homicidal. (TR. 680). By April 2017, Plaintiff reported that at the time of her inpatient hospitalization she "was at her breaking point from a lot of confrontational events and stress" but she reported being "better now." (TR. 762).

Plaintiff's records on July 12, 2017, from Mrs. Jones reveal the following: "She has been feeling depressed. She states she has to take several breaks while doing any tasks at her house. She states her energy level is very low." (TR. 848). Then, by August 9, 2017, the records reveal that "She states she feels better today. . . . She states she has been working towards not allowing other people to 'stress me out'" (TR. 843). Plaintiff's records from Dr. Hadidi on August 14, 2017, reveal that Plaintiff reported she was sleeping well and the anxiety was not as bad as it was. (TR. 900). Dr. Hadidi's records also reveal that while Plaintiff reported she was still going through some depression, it too was not as bad as it was previously. (TR. 900).

Plaintiff's records from Clarksdale GI Clinic dated January 23, 2018, reveal that Plaintiff reported no depression, no sleep disturbances, no agitation, and no fatigue. (TR. 920). She was found to have good judgment, normal mood and affect, and be active and alert. (TR. 920).

Plaintiff's records from The Greenville Clinic dated March 19, 2018, reveal that while anxiety and depression were present, she was alert, oriented, and her mood and affect were described as normal. (TR. 908). Similarly, her records from June 19, 2018, reveal that anxiety was not present, she was alert and oriented, and her mood and affect were normal. (TR. 915).

Records from Region One Mental Health Center during May 2018 indicate that Plaintiff missed at least two appointments. (TR. 929; 932). Therapy progress notes from April 25, 2018, indicate that Plaintiff stated she was "doing better since changes in her medication," and she continued to attend church on a regular basis and spend time with her daughter. (TR. 934). Similarly, progress notes from April 11, 2018, indicate that Plaintiff stated she is working towards

improving her social skills and has learned to walk away to avoid confrontation with others. (TR. 936). In February 2018, she reported she has improved sleep pattern, increased energy levels, and was taking her medication as prescribed. (TR. 940). As early as October 2017 Plaintiff reported she was making progress as evidenced by decreased irritability, improved sleep patterns, and increased energy level. (TR. 952).

Dr. Mendoza's records from AEH on October 24, 2019, labeled Plaintiff's depression as "controlled." (TR. 1020). Then, on January 23, 2020, Plaintiff's therapist Ms. Tenesha Marshall reported that she was "progressing as evidence by self-report." (TR. 1049).

Thus, taking the record as a whole, it was within the ALJ's purview to find that the opinions of Mrs. Jones were not persuasive. While Plaintiff argues that it was incorrect for the ALJ to find Mrs. Jones's opinions unreliable because they were only four months apart, it appears to this Court that the ALJ provided other reasons for making that finding that reach the "substantial evidence" standard. For example, the ALJ also found Mrs. Jones's opinions inconsistent with her records in finding that "Mrs. Jones's own treatment records demonstrate significant improvement with medication changes on and after October 2017." (TR. 23).

As for other medical opinion evidence, the ALJ considered consultative examiner Dr. Buck's opinion and found it persuasive (TR. 835-838). After examining Plaintiff in June 2017, Dr. Buck opined that Plaintiff was able to understand, remember, and carry out instructions, and, although she reported a recent history of problems getting along with coworkers, Plaintiff seemed fairly able to respond appropriately to coworkers and supervisors in work environment (TR. 837). The ALJ's RFC assessment reflected this opinion by limiting Plaintiff to work with no interaction with the general public and no more than occasional interaction with coworkers and supervisors.

The ALJ also discussed State agency psychological consultant Dr. Hennings's prior

administrative medical finding (TR. 138-40, 149-51). State agency psychological consultants are experts in disability evaluation, and the ALJ must consider prior administrative medical findings provided by State agency psychological consultants. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Dr. Hennings concluded that, notwithstanding her mental impairments, Plaintiff had no limitation in her understanding, memory, sustained concentration, or persistence.

Plaintiff argues that "while there may be some indications of improvement sporadically throughout the record, the complete picture of the medical evidence is reflective of someone who cannot maintain or sustain competitive employment." However, the Fifth Circuit has clarified that an affirmative finding that an individual can maintain employment is necessary only when an individual's "ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). Plaintiff has failed to set forth evidence tending to show that her symptoms and impairments were documented as waxing and waning over the relevant period.

Lastly, the Plaintiff argues that the ALJ erred in not ordering a second psychological examination in addition to Dr. Buck's June 2017 examination. The ALJ retains discretion in ordering a consultative examination. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Controlling authority holds that an ALJ is not required to obtain a consultative examination unless "such an examination is necessary to enable the [ALJ] to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). Regarding whether a second consultative examination should have been obtained, the relevant regulation lists four situations that "may" require a consultative examination: (1) The additional evidence needed is not contained in the medical records; (2) The evidence that may have been available from treating or other medical sources cannot be obtained for reasons beyond a claimant's control, such as death or noncooperation of a

medical source; (3) Highly technical or specialized medical evidence that the Commissioner needs is not available from claimant's treating or other medical sources; or (4) There is an indication of a change in a claimant's condition that is likely to affect his/her ability to work. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). The undersigned finds that Plaintiff has failed to show that the facts here satisfy these conditions, and it was within the ALJ's purview to exercise his discretion whether to obtain a second consultative psychological examination.

## Conclusion

As the Fifth Circuit reasoned in *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021), "Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards." Similarly, here, the undersigned cannot say that the ALJ's decision was not based on substantial evidence or that he improperly applied the relevant legal standards.

While the ALJ did not use the "magic words," he included details in his opinion related to why he found that the opinions of Mrs. Jones lacked supportability and consistency. The ALJ was under no obligation to order an additional examination, and the Plaintiff has not shown that it was reversible error for the ALJ not to have made a specific finding related to ability to maintain employment. Accordingly, for the reasons stated above, the Court finds that substantial evidence supports the ALJ's decision. Thus, the Commissioner's decision should be and is hereby affirmed.

**SO ORDERED** this, the 5th day of July, 2022.

/s/ Jane M. Virden
United States Magistrate Judge